IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TERRENCE M. GORE,                      §
                                       §
            Plaintiff,                 §
                                       §
V.                                     §            No. 3:15-cv-3963-M-BN
                                       §
CEDAR HILL INDEPENDENT                 §
SCHOOL DISTRICT, ET AL.,               §
                                       §
            Defendants.                §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge for pretrial management pursuant to 28 U.S.C. § 636(b) and a standing order of reference from Chief Judge Barbara M. G. Lynn. The undersigned issues the following findings of fact, conclusions of law, and recommendation that, for the reasons and to the extent explained below, the Court should deny Defendants' motion to strike, grant Defendants' amended motion to dismiss, and deny without prejudice Plaintiff's motion for leave to amend.

**Applicable Background**

Plaintiff Terrence M. Gore, a *pro se* litigant, filed this suit, asserting various employment-related causes of action against Defendants Cedar Hill Independent School District ("Cedar Hill ISD"); its superintendent, Orlando Riddick; and its Board of Trustees (the "Board"). *See* Dkt. No. 22.

Plaintiff was granted leaved to proceed *in forma pauperis*, *see* Dkt. No. 5, and

-1-

following judicial screening, *see* Dkt. Nos. 6 & 8, his complaint was ordered served on December 16, 2015, *see* Dkt. No. 9.

Defendants responded by simultaneously answering and moving to dismiss (and, alternatively, for a more definite statement as to certain claims) the complaint. *See* Dkt. Nos. 13 & 14. Because Defendants indicated in their motion that, if the Court were to grant their motion to dismiss in its entirety, only "Plaintiff's 'adverse employment action' claim under the Family and Medical Leave (except as to punitive damages) [would] remain[]," Dkt. No. 13 at 10 n.1, the Court required the parties to submit a joint status report under Federal Rule of Civil Procedure 26(f) (the "Rule 26(f) report") and scheduled an initial Federal Rule of Civil Procedure 16(b) scheduling conference, *see* Dkt. No. 19.

Before the Rule 26(f) report was filed, Plaintiff filed an amended complaint [Dkt. No. 22], to which Defendants responded by filing their amended motion to dismiss also seeking, in the alternative, a more definite statement, which is now pending before the Court. *See* Dkt. No. 25. According to the amended complaint, Plaintiff was employed as an elementary teacher at Cedar Hill ISD from July 1, 2007 until January 5, 2015. *See id.* at 3. Plaintiff alleges that, on January 30, 2013, he suffered a work-related injury, for which he had to undergo multiple surgeries. *See id.* Plaintiff also indicates that the principal incident giving rise to his claims, which are outlined below, was Cedar Hill ISD's termination of his employment in January 2015.

The Court entered an initial scheduling order on February 29, 2016, *see* Dkt. No. 32, and, although the Court abated all discovery "until the Court issues a decision on

Defendants' amended motion to dismiss and, alternatively, motion for definite statement," *id.*, ¶ 5, March 14, 2016 was set as the deadline to amend the pleadings and join additional parties, *see id.*, ¶¶ 2 & 3.

To address the onslaught of motions filed before Defendants' amended motion became ripe, the Court conducted a status conference on March 23, 2016 to consider and, where possible, dispose of multiple non-dispositive motions. *See* Dkt. Nos. 55 & 56. Defendants then filed an amended answer [Dkt. No. 57], and the parties filed an agreed motion to dismiss the Board [Dkt. No. 59], which the Court granted on March 30, 2016, *see* Dkt. No. 60.

These findings, conclusions, and recommendations are entered to address the three pending motions: Defendants' amended motion to dismiss/alternative motion for a more definite statement [Dkt. No. 25]; Defendants' motion to strike or exclude exhibits attached to Plaintiff's response to that motion [Dkt. No. 63]; and Plaintiff's motion for leave to file a third amended complaint [Dkt. No. 72].

## Legal Standards and Analysis

I.   <u>Amended Motion to Dismiss and Motion to Strike</u>

In their amended motion to dismiss [Dkt. No. 25], Defendants attack many of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) and attack other claims under Federal Rule of Civil Procedure 12(b)(1). The undersigned addresses below each of Plaintiff's claims and Defendants' arguments regarding them in the order that they are presented in the amended motion [Dkt. No. 25].

But, before turning to that motion, the undersigned has treated Defendants'

motion to strike [Dkt. No. 63] as an objection to the evidence that the Court may consider in making findings, conclusions, and a recommendation as to the amended motion to dismiss. Accordingly, although the substance of the motion to strike has been considered in the analysis below, it should be denied as submitted.

    A.    Legal Standards

        1.    Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). The Court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).

The Court must dismiss a complaint for lack of subject matter jurisdiction "'when the court lacks the statutory or constitutional power to adjudicate the case.'" *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). The United States Court of Appeals for the Fifth Circuit recognizes a distinction between a "facial" attack to subject matter jurisdiction, which is based solely on the pleadings, and a "factual" attack to jurisdiction, which is based on

affidavits, testimony, and other evidentiary material. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981); *accord Ramming*, 281 F.3d at 161 ("Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."). Regardless of the nature of the attack, the plaintiff seeking a federal forum "constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming*, 281 F.3d at 161. Where, as here, a defendant files a Rule 12(b)(1) motion to dismiss, the attack is presumptively facial, and the Court need look only to the sufficiency of the allegations of plaintiff's complaint, or on the complaint as supplemented by undisputed facts, all of which are presumed to be true. *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1989); *Paterson*, 644 F.2d at 523. On a factual attack, however, the Court "is empowered to consider matters of fact which may be in dispute," *Ramming*, 281 F.3d at 161, and, to oppose the Rule 12(b)(1) motion, "a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction," *Paterson*, 644 F.2d at 523.

      2.      Rule 12(b)(6)

In deciding a motion under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007). To state a claim upon which relief may be granted, Plaintiffs must plead

"enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, Plaintiffs must allege more than labels and conclusions, and, while a court must accept all of the Plaintiffs' allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. ____, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV.

P. 8(a)(2)-(3), (d)(1), (e)). The United States "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S. Ct. at 347, and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346. That rationale has even more force in this case, as the Court "must construe the pleadings of pro se litigants liberally." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the

plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

B.    Analysis

1.    Superintendent Riddick should be dismissed from this suit.

Defendants argue that the claims against Riddick should be dismissed because Plaintiff has brought claims against him in his official capacity, which are duplicative of Plaintiff's claims against Cedar Hill ISD. *See* Dkt. No. 25 at 14. Before deciding whether the claims against Riddick should be dismissed as duplicative, the Court must first determine whether Plaintiff has sued Riddick in the superintendent's official capacity only.

Because, in this circuit, "[a] person's capacity need not be pled except to the extent to show jurisdiction of the court," "[t]he allegations in the complaint must be examined in order to determine the nature of the plaintiff's cause of action." *Parker v. Graves*, 479 F.2d 335, 336 (5th Cir. 1973) (per curiam) (citing FED. R. CIV. P. 9(a)); *see Forside v. Miss. State Univ.*, No. 101CV438-DD, 2002 WL 31992181, at *5 n.2 (N.D. Miss. Dec. 30, 2002) ("the Fifth Circuit looks to the substance of the claim, the relief

sought, and the course of proceedings"); *see also, e.g., Thomas v. Dallas Hous. Auth.*, No. 3:14-cv-4530-B-BN, 2015 WL 2192785, at *5 (N.D. Tex. May 11, 2015) ("As to Defendant Jackson, the undersigned also has examined the allegations of Plaintiffs' complaint, the substance of his claims, and the relief he seeks ... and concludes that Defendant Jackson has been sued in her individual capacity." (citations omitted)).

Plaintiff lists Riddick as a party to the suit "in his capacity as Superintendent of Cedar Hill Independent School District." Dkt. No. 22 at 2. Plaintiff mentions Riddick by name at least four other times in the amended complaint. In one instance, Plaintiff repeats the notion that Riddick's alleged actions were "in his capacity as superintendent for Cedar Hill ISD." *Id.* at 9. To say that Riddick is party to the suit "in his capacity as superintendent of Cedar Hill ISD" is functionally equivalent to saying that Riddick is a party to the suit in his official capacity. That Plaintiff at the outset lists Riddick as a party to the suit in his official capacity and again in the amended complaint notes that Riddick was acting in his official capacity, combined with the fact that Plaintiff at no point in the amended complaint ever specifies that he is suing Riddick in both his official and personal capacity, permits the inference that Plaintiff in the amended complaint is bringing claims against Riddick for actions Riddick took in his official capacity only. *See Collins v. Fisher*, No. 5:08-cv-203-DCB-JMR, 2010 WL 4102954, at *3 (S.D. Miss. Oct. 18, 2010) (finding that the plaintiff's twice invoking the phrase "official capacity" in the complaint, without ever using the phrase "individual capacity," was sufficient to determine that the plaintiff had asserted only claims against the defendants in their official capacities).

"An official-capacity lawsuit is 'only another way of pleading an action against an entity of which an officer is an agent.'" *Culbertson v. Lykos*, 790 F.3d 608, 623 (5th Cir. 2015) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). When an individual is sued is his official capacity, liability is imposed "'on the entity that he represents provided, of course, the public entity received notice and an opportunity to respond.'" *Id.* (quoting *Brandon v. Holt*, 469 U.S. 464, 471-72, (1985)); *see also Graham*, 473 U.S. at 166 ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

Where a plaintiff brings claims against both a public officer in his official capacity and the public entity for which he works, the claims "essentially merge." *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000). When this occurs, the court may dismiss the claims against the public official as duplicative. *See, e.g.*, *Flores v. Cameron Cnty.*, 92 F.3d 258, 261 (5th Cir. 1996) (where the district court had dismissed claims against county commissioners in their official capacities "because those claims were duplicative of the claims against the County").

Here, Plaintiff has brought a set of claims against named Defendants Cedar Hill ISD and Superintendent Riddick. Because Plaintiff has sued Riddick in his official capacity, the claims against Riddick are really claims against his employer, Cedar Hill ISD, which is already a named defendant in, and has appeared to defend against, the suit. *See* Dkt No. 22 at 2.

The claims against Riddick and Cedar Hill ISD are therefore duplicative, and

the undersigned recommends that the claims against Riddick be dismissed accordingly.

      2.    **Plaintiff cannot state a claim under the FMLA.**

Plaintiff alleges that Defendants violated his rights under the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* (the"FMLA"). The FMLA declares in pertinent part that an eligible employee "shall be entitled to a total of 12 workweeks of leave ... because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." *Id.* § 2612(a)(1). "Upon the employee's timely return, the employer must reinstate the employee to the same position as previously held or a comparable position with equivalent pay, benefits, and working conditions." *Id.* § 2614(a)(1); *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 345 (5th Cir. 2013).

There are two types of claims that one may bring under the FMLA – "interference" claims and "retaliation" claims. *See Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 768 (5th Cir. 2015). FMLA interference claims stem from Section 2615(a)(1), which provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter," while FMLA retaliation claims stem from Section 2615(a)(2), which provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(1)-(2); *Bryant*, 781 F.3d at 768.

Plaintiff alleges that, when he was "terminated from his position as an elementary classroom teacher," he suffered an adverse employment action in

retaliation for utilizing leave under the FMLA. Dkt. No. 22 at 4.

To state a prima facie claim of FMLA retaliation, a plaintiff must allege: "1) he is protected under the FMLA; 2) he sought to return to work before the FMLA leave expired; and 3) the employer failed to reinstate him to [his] position, or an equivalent position." *Mauder v. Metro. Transit Auth. of Harris Cnty.*, 446 F.3d 574, 580 (5th Cir. 2006).

But Plaintiff's complaint contains no factual allegations that would support a retaliation claim under the FMLA. Plaintiff states that Defendants terminated his employment about two weeks after "notifying him that he was about to exhaust leave under FMLA." Dkt. No. 22 at 4. Plaintiff's main point regarding his FMLA rights is that "Defendants placed Plaintiff on involuntary FMLA. Plaintiff did not request leave under FMLA, as he was under the impression that his employment was deemed protected under regulations, statues [sic] and policy regarding workers' compensation." *Id.* at 5.

There are two problems with these assertions. First, Fifth Circuit precedent is clear that employees need not consent to being placed on FMLA leave provided that the employer is able to determine, based on information provided by the employee, that the employee is suffering from a "serious health condition." *Willis v. Coca Cola Enters., Inc.*, 445 F.3d 413, 417 (5th Cir. 2006) ("[I]t is not contrary to the FMLA for an employee to be placed on 'involuntary FMLA leave.'"); *id.* at 419 ("The FMLA is implicated, as the statutory language indicates, when the employee has provided sufficient information to 'allow the employer to determine that the leave qualifies

-12-

under the Act.'" (quoting 29 C.F.R. § 825.208(a)(1))). According to current regulations promulgated by the Department of Labor, it is not necessary for an employee to "even mention the FMLA" for an employer to be able to determine whether the employee qualifies for FMLA leave. 29 C.F.R. § 825.301(a)-(b). Thus, Plaintiff's allegation that Defendants violated his statutory rights by "plac[ing] [him] on involuntary FMLA [leave]" is without merit as a matter of law.

Second, Plaintiff incorrectly suggests that Defendants may not run his entitled FMLA leave concurrently with his entitled workers' compensation absences. *See* Dkt. No. 22 at 5. FMLA regulations expressly state that "[a]n employee may be on a workers' compensation absence due to an on-the-job injury or illness which also qualifies as a serious health condition under FMLA. The workers' compensation absence and FMLA leave may run concurrently." 29 C.F.R. § 825.702(d)(2); *see also Mahoney v. Ernst & Young LLP*, 487 F. Supp. 2d 780, 801 (S.D. Tex. 2006) ("The FMLA only requires that an employer grant each employee twelve weeks of leave each year for FMLA-qualifying reasons, such as a serious health condition. It does not dictate that long-term disability leave shall NOT run concurrently with FMLA leave.").

Moreover, as Defendants point out, Cedar Hill ISD's board policy expressly states that it requires its employees to use FMLA leave concurrently with other types of leave:

> When an absent employee is eligible for FMLA leave, the District shall designate the absence as FMLA leave. The District shall require the employee to use temporary disability leave and paid leave, including compensatory time, concurrently with FMLA leave. An employee receiving workers' compensation income benefits may be eligible for paid

> or unpaid leave. An absence due to a work-related injury or illness shall be designated as FMLA leave, temporary disability leave, and/or assault leave, as applicable.

Dkt. No. 22-1 at 28; Dkt. No. 25 at 16. Thus, on the facts that Plaintiff alleges, Defendants did not violate or interfere with Plaintiff's FMLA rights either by running his FMLA leave concurrently with other leave available to him or by running his FMLA leave without his consent.

Neither do the facts as alleged by Plaintiff establish that he has a viable retaliation claim under the FMLA.

As Plaintiff appears to concede, what occurred here is that Plaintiff informed Defendants that he was still unable to return to work after exhausting all available FMLA leave. *See* Dkt. No. 22 at 4-5. The FMLA protects employees from retaliation for using entitled FMLA leave; but, when an employee after exhausting the 12 weeks of available FMLA leave still cannot return to work, or fails to do so, then that employee no longer has a right to reinstatement under the FMLA, and the employer may lawfully terminate him. *See Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 763-64 (5th Cir. 2001) ("If an employee fails to return to work on or before the date that FMLA leave expires, the right to reinstatement also expires." (collected cases omitted)), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *see, e.g.*, *Jackson v. Signh*, Civ. A. No. H-06-2920, 2007 WL 2818322 (S.D. Tex. Sept. 25, 2007) (dismissing FMLA retaliation claim in which the plaintiff failed to allege that "'he sought to return to work before the FMLA leave expired'" (quoting *Mauder*, 446 F.3d at 580)).

Therefore, Defendants' termination of Plaintiff's employment after he informed them that he still could not return to work even after the expiration of his FMLA leave did not violate Plaintiff's rights under the FMLA.

>    3.    Plaintiff's claim under Title I of the Americans with Disabilities Act as amended ("ADA") should be dismissed as untimely.

Plaintiff alleges in his amended complaint that "Defendants retaliated against [him] for requesting reasonable accommodations for his disability under" the ADA and that Defendants "terminated [him] from employment as a result of a ... disability." Dkt. No. 22 at 8.

The ADA "prohibits certain employers, including the States, from 'discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360-61 (2001) (quoting 42 U.S.C. § 12112(a)).

Defendants move to dismiss Plaintiff's ADA Title I claim as untimely. *See* Dkt. No. 25 at 18.

In order to file a claim in federal court under Title I of the ADA, a plaintiff must first receive a "right-to-sue" letter from the EEOC. *See Dao v. Auchan Hypermarket*, 96 F.3d 787, 788-89 (5th Cir. 1996). A plaintiff must then file suit within 90 days of receiving the letter. *See id.* at 789.

Plaintiff asserted in his original complaint that he received the EEOC right-to-

sue letter on September 9, 2015. *See* Dkt. No. 3 at ¶ 4. While Defendants expressed their doubts about this assertion, as Defendants claim to have received a copy of the right-to-sue letter over a month earlier, on August 4, 2015, *see* Dkt. No. 25 at 18, Plaintiff submitted through a verified response to the Court's questionnaire [Dkt. No. 6], a copy of that letter indicating that it was mailed on September 2, 2015, *see* Dkt. No. 8 at 7. Regardless of this disparity, if Plaintiff received his right-to-sue letter on September 9, he had until December 8, 2015 to file a complaint in federal court. *Cf. Lee v. Columbia/HCA of New Orleans, Inc.*, 611 F. App'x 810, 812 (5th Cir. 2015) (per curiam) ("In the absence of a concrete allegation to the contrary, we presume that a claimant receives an EEOC right-to-sue letter within three days after it is mailed.").

But this action was not filed until December 14, 2015. *See* Dkt. No. 3. The 90-day limitations period is strictly construed, and courts routinely dismiss claims that are filed after the limitations period expires for lack of subject-matter jurisdiction, even if the claim is filed only one day late. *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379-80 (5th Cir. 2002); *see also Morgan v. Potter*, No. Civ. A. 05-2860, 2006 WL 380548, at *2 (E.D. La. Feb. 13, 2006), *aff'd*, 489 F.3d 195 (5th Cir. 2007) (dismissing as untimely *pro se* complaint filed 92 days after presumptive receipt of the EEOC right-to-sue letter where the plaintiff "ha[d] not alerted the Court to any circumstances which would warrant the tolling of the ninety-day period nor ha[d] she disputed the date by which she was presumed to have received her notice of right-to-sue").

Therefore, because Plaintiff's claim under Title I of the ADA was filed more than 90 days after he claims to have received his right-to-sue letter from the EEOC, the

Court should dismiss the claim.

    4.    Plaintiff's cannot state an employment discrimination claim under Title II of the ADA.

In a possible attempt to get around his time-barred Title I claim, Plaintiff alleges that "Defendants violated [his] rights under Title II" of the ADA, which "extends to state and local governments the non-discrimination provisions of the Rehabilitation Act." Dkt. No. 22 at 8. But Plaintiff has failed to consider *Taylor v. Shreveport*, in which the Fifth Circuit held that, "[u]nlike Title I of the ADA, "Title II does not create a cause of action for employment discrimination." 798 F. 3d 276, 282 (5th Cir. 2015) (collecting cases).

In *Taylor*, the Fifth Circuit relied on *Brumfield v. City of Chicago*, in which the United States Court of Appeals for the Seventh Circuit held that "Title II of the ADA does not cover disability discrimination in public employment; this kind of claim must be brought under Title I." 735 F.3d 619, 622, 625 (7th Cir. 2013) (agreeing with the United States Court of Appeals for the Ninth and Tenth Circuits; citing *Elwell v. Okla. ex rel. Bd. of Regents of the Univ. of Okla.*, 693 F.3d 1303 (10th Cir. 2012); *Zimmerman v. Or. Dep't of Justice*, 170 F.3d 1169 (9th Cir. 1999)).

As to Plaintiff's argument that the Court should not dismiss his Title II claim on the basis of the regulations promulgated by the Attorney General, *see* Dkt. No. 38 at 17-18 (discussing 28 C.F.R. § 35.140(a)), the Seventh Circuit in *Brumfield* rejected a similar argument:

    The Attorney General has promulgated a regulation stating that Title II applies to disability discrimination in public employment: "No

qualified individual with a disability shall, on the basis of disability, be subjected to discrimination in employment under any service, program, or activity conducted by a public entity." 28 C.F.R. § 35.140(a) (2012). Brumfield argues that we should defer to the Attorney General's interpretation under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

Not so fast. An agency's interpretation is entitled to *Chevron* deference if Congress has authorized the agency to interpret the statute through rules carrying the force of law and the agency's interpretation is both reasonable and promulgated through the exercise of the authority given by Congress. But we do not address the deference question unless the statute is silent or ambiguous regarding the matter at hand....

We conclude that Title II *unambiguously* does not apply to the employment decisions of state and local governments. To repeat: Title II provides that no eligible disabled person "shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination" by a state or local unit of government. 42 U.S.C. § 12132.

735 F.3d at 625-26 (some citations omitted; emphasis added); *see also, e.g.*, *Pendleton v. Prairie View A&M Univ.*, 121 F. Supp. 3d 758, 760-62 (S.D. Tex. 2015) (relying on *Brumfield*, *Elwell*, and *Zimmerman* to dismiss a similar claim, concluding that "[t]he proper interpretation of Title II is a difficult question. The prohibition on 'discrimination' in the second clause of the statute initially invites a broad reading, and that appears to be consistent with legislative history and subsequent regulatory interpretations. The Court is persuaded, however, that, when read in the context of the structure of the law, Title II unambiguously applies only to 'services, programs, [and] activities,' and that employment does not fall into that category.").

Following this same reasoning, Plaintiff's Title II claim should therefore be dismissed.

5.   Plaintiff cannot state a claim under Section 504 of the Rehabilitation Act of 1973 ("Section 504").

Section 504 provides that "[n]o otherwise qualified individual with a disability in the United States, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination." 29 U.S.C.A. § 794(a). "The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990." *Id.* at § 794(d); *see also Burroughs v. Shared Hous. Ctr.*, No. 3:15-cv-333-N-BN, 2015 WL 4077216, at *6 (N.D. Tex. June 17, 2015), *rec. adopted*, 2015 WL 4089756 (N.D. Tex. July 6, 2015) ("The Rehabilitation Act is operationally identical to the [ADA] in that both statutes address discrimination against those with disabilities, but, while the ADA is limited to public entities, including private employers, the Rehabilitation Act extends to programs or activities that, though private, receive federal funding." (citing *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010))).

While Section 504 seems to merely appear as a label in Plaintiff's operative complaint, *see* Dkt. No. 22 at 5, the parties have briefed whether Plaintiff has alleged a viable Section 504 claim, *compare* Dkt. No. 25 at 20-21 & Dkt. No. 65 at 14-15, *with* Dkt. No. 38 at 18-22, and, given Plaintiff's *pro se* status, requiring liberal construction of his claims and allegations, the undersigned will assume that a separate Section 504 claim has been alleged. Nevertheless, Defendants assert that Plaintiff cannot state a viable Section 504 claim because he has admitted that he could not attend work and

therefore is not qualified for his job.

"[O]nly an employee considered to be a 'qualified individual with a disability' has standing to sue under the ADA." *Morton v. GTE North, Inc.*, 922 F. Supp. 1169, 1178 (N.D. Tex. 1996). "An individual is qualified for his or her job under the ADA if, 'with or without reasonable accommodation,' the individual 'can perform the essential functions of the employment position that such individual holds or desires.'" *Starts v. Mars Chocolate N. Am., LLC*, 633 F. App'x 221, 224 (5th Cir. 2015) (per curiam) (quoting 42 U.S.C. § 12111(8)). "In assessing whether the plaintiff is a qualified individual, [a court must] focus on whether he or she was qualified at the time of his or her termination." *Reeves v. Dollar Gen. Corp.*, 180 F.3d 264, 1999 WL 274587, at *2 n.2 (5th Cir. Apr. 23, 1999) (per curiam); *see also McMillan v. City of New York*, 711 F.3d 120, 127 (2d Cir. 2013) ("After the essential functions of the position are determined, the plaintiff must demonstrate that he or she could have performed these functions, with or without reasonable accommodation, at the time of the termination or discipline.").

"'An essential element of any job is an ability to appear for work.'" *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996) (quoting *Carr v. Reno*, 23 F.3d 525, 530 (D.C. Cir. 1994); bracket and ellipse omitted); *see also Hypes v. First Commerce Corp.*, 134 F.3d 721, 727 (5th Cir. 1998) ("courts are in agreement that regular attendance is an essential function of most jobs" (collected cases omitted)). "Additionally, reasonable accommodation does not include an employer waiting indefinitely for the employee's medical conditions to be corrected." *Bernard v. EDS*

*Noland Episcopal Day Sch.*, 62 F. Supp. 3d 535, 542 (W.D. La. 2014) (citing *Rogers*, 87 F.3d at 760).

While Plaintiff provides that he "never stated that he request[ed] indefinite leave as a reasonable accommodation," he admits that his injury was a "prolonged condition" and cites to at least two surgeries that he underwent after his January 2015 termination – a "February 18, 2015 right shoulder surgery" and a "December 16, 2015 transposition surgery of the ulnar nerve in right arm." Dkt. No. 38 at 24. Plaintiff further alleges that his inability to return to work, to begin the 2014-2015 school year in August 2014, following his initial surgery in January 2014, was because Defendants failed to authorize medical treatments requested by his physician, which he appears to allege contributed to the September 2014 revelation that he would need additional surgery. *See* Dkt. No. 38 at 21-22.

But nowhere does Plaintiff allege that he could attend work at the time that he was terminated. Indeed, the facts that he alleges point to the opposite conclusion. Therefore, because the only accommodation that Plaintiff appears to seek (if any) is additional time to recover, he cannot allege a claim under Section 504 as he cannot show that at the time he was terminated he was a qualified individual with a disability.

> [A]llowing [Plaintiff] additional leave time is not a reasonable accommodation. As [the Fifth Circuit] stated in *Rogers*, "Nothing in the text of the reasonable accommodation provision requires an employer to wait an indefinite period for an accommodation to achieve its intended effect.... [R]easonable accommodation does not require [an employer] to wait indefinitely for [the employee's] medical conditions to be corrected."

Case 3:15-cv-03963-M-BN   Document 77   Filed 07/26/16   Page 22 of 38   PageID 2384

*Bazile v. AT&T-Bell Labs., Inc.*, 142 F.3d 1279, 1998 WL 224540, at *2 (5th Cir. Apr. 20, 1998) (per curiam) (quoting 87 F.3d at 760 (in turn quoting *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995))); *see Cortez v. Raytheon Co.*, 663 F. Supp. 514, 522 (N.D. Tex. 2009) ("[I]t is undisputed that as of the time of her discharge, Cortez could not work at all. Because Cortez could not attend work, she is not a 'qualified individual with a disability' under the ADA.").[1]

Plaintiff's Section 504 claim should therefore be dismissed.

> 6.    Plaintiff has failed to state claims under the Fourteenth Amendment's due process and equal protection clauses.

First, in the operative complaint, under the heading "Denial of 14th Amendment Rights," Plaintiff includes the term "equal protection" – without further explanation. Dkt. No. 22 at 11. In his response, Plaintiff adds: "The Equal Protection clause does not exclude and is applicable to disability discrimination. Plaintiff has stated his suffered

---

[1] *See also Bernard*, 62 F. Supp. 3d at 543 ("[A]t the time that Bernard was terminated, she stated that she did not know when she was going to be permitted to return to work. An employer is not required to grant indefinite leave as a reasonable accommodation. For the foregoing reasons, Bernard has not been able to show that she was a 'qualified individual' within the meaning of the ADA." (citation omitted)); *Fields v. St. Bernard Parish Sch. Bd.*, No. Civ. A. 99-3396, 2000 WL 1560012, at *8 (E.D. La. Oct. 16, 2000) ("Fields was unable to perform an essential function of her job with or without an accommodation because she could not return to work. Accordingly, she was not a qualified individual under the ADA definition and relevant case law and her ADA claim must be dismissed."); *Vanderford v. Parker Hannifin Corp.*, 971 F. Supp. 1079, 1081 (N.D. Miss. 1997) ("Vanderford argues that Parker Hannifin was obligated under the ADA to 'reasonably accommodate' her leave of absence. No such requirement exists under the ADA.... Parker Hannifin was entitled to terminate Vanderford simply because of her lack of attendance."); *Scott v. Kaneland Cmty. Unit Sch. Dist. No. 302*, 898 F. Supp. 2d 1001, 1006 (N.D. Ill. 2012) ("To the extent that Scott contends that he was temporarily disabled at times during episodes of severe depression and was unable to do any work as any type of teacher during those periods, the undisputed evidence shows that Scott was not a qualified individual and was unable to perform the essential functions of his job during those periods as required under the ADA.").

-22-

adverse employment action (termination) due to his disability from an on the job injury." Dkt. No. 38 at 36.

"The Equal Protection Clause directs that persons similarly situated should be treated alike." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).

> To state a claim under the Equal Protection Clause, a ... plaintiff must either allege that (a) "a state actor intentionally discriminated against [him] because of membership in a protected class[,]" *Williams*, 180 F.3d at 705 (citation omitted), or (b) he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

*Gibson v. Tex. Dep't of Ins. – Div. of Worker's Comp.*, 700 F.3d 227, 238 (5th Cir. 2012) (internal citation modified).

Plaintiff fails to state an Equal Protection Clause violation because, most notably, he neither alleges facts that support a showing that Defendants discriminated against him based on a disability nor identifies others similarly situated who Defendants treated differently. *Cf. Shah v. Univ. of Tex. Sw. Med. Sch.*, 54 F. Supp. 3d 681, 703 (N.D. Tex. 2014) ("[T]he complaint contains no factual allegation that supports a showing that Dr. Vicioso discriminated against Shah based on his ethnicity. Shah relies on nothing more than a conclusory allegation that is insufficient to overcome qualified immunity."); *Hickman v. Mercado*, No. 4:13-cv-797-O, 2014 WL 66778, at *7 (N.D. Tex. Jan. 8, 2014) ("Hickman has not alleged a violation of her equal protection rights because she has not alleged that she has been treated differently because of some personal or class characteristic such as race or religion, and on each

of her three bases for her equal protection claim, she has not shown that she was treated differently than a similarly situated inmate who suffered from the same medical conditions." (collected cases omitted)).

The Due Process Clause provides that no person shall be deprived "of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1.

Plaintiff claims that "Defendants deprived" him "of constitutional right as a government employee of 'life, liberty or property' without due process of law." Dkt. No. 22 at 11 ("As a public school teacher, Plaintiff is considered to have a property interest in his jobs, and the right to due process places significant restrictions on arbitrary dismissals unrelated to job performance. Since, that property was unlawfully taken, and Plaintiff has been deprived of said property rights; Plaintiff suffers an injury that can be addressed through these proceedings." (citing TEX. EDUC. CODE § 21.204(e) ("A teacher does not have a property interest in a contract beyond its term."))).

"[A]n essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). Accordingly, the type of procedural due process required depends on the case. *See Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) ("Due process is flexible and calls for such procedural protections as the particular situation demands.").

Accepting that Plaintiff had a property right to continued employment, as he alleges,

> [i]n the specific context of the termination of a tenured employee, the Supreme Court has ruled that due process ordinarily requires the employer to give the employee "some kind of a hearing" prior to termination, namely, "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."

*Washington v. Burley*, 930 F. Supp. 2d 790, 799-800 (S.D. Tex. 2013) (quoting *Loudermill*, 470 U.S. at 542-46).

As Plaintiff also alleges, "[t]he District stated in writing on September 4, 2014 that [it was] terminating Plaintiff's employment for 'good cause,'" and he was "terminated" on "January 5, 2015." Dkt. No. 22 at 4. And, according to a Texas state court's amended findings of fact, of which this Court may take judicial notice, *cf. Brown v. Lippard*, 350 F. App'x 879, 882 n.2 (5th Cir. 2009) (per curiam), prior to his termination, Plaintiff requested a hearing before an independent hearing examiner, an evidentiary hearing was conducted, Plaintiff appealed the hearing examiner's decision to the school board, and, after his termination, Plaintiff appealed to the Texas Commissioner of Education and then has appealed the Commissioner's decision in the state courts, *see Gore v. Cedar Hill Indep. Sch. Dist.*, No. DC-15-06183 (134th Jud. Dist. Ct., Dallas Cnty., Tex. Mar. 21, 2016) (reversing Commissioner's dismissal of Plaintiff's appeal for want of jurisdiction following a bench trial, a ruling which has been appealed).

In light of these undisputed facts, Plaintiff cannot state a claim that Defendants denied him procedural due process in terminating his employment. *See Coggin v. Longview Indep. Sch. Dist.*, 337 F.3d 459, 465-66 (5th Cir. 2003) (en banc) ("Under

well-established federal law, the constitutional minimums for due process require that the final decision maker must hear and consider the employee's story before deciding whether to discharge the employee.... The Texas law [applicable here] complies with the federal due process requirement by providing that the school board, as the exclusive decision maker with regard to employment termination decisions, 'shall allow each party to present an oral argument to the board' before the board determines cause or discharges the employee." (quoting TEX. EDUC. CODE ANN. § 21.258(b); footnotes omitted)); *cf. Washington v. Burley*, 930 F. Supp. 2d 790, 803 (S.D. Tex. 2013) ("Washington's right to pretermination due process would have been satisfied had [the school district] provided him with even a short, informal opportunity to present his side of the story to the board members who would vote on his termination.").[2]

---

[2] *See also Walker v. Hitchcock Indep. Sch. Dist.*, 508 F. App'x 314, 320 (5th Cir. 2013) (per curiam) ("Walker received all the process she was due. The Board of Trustees notified her of its proposed decision not to renew her contract and of her right to appeal. She did appeal and was afforded the opportunity to present her case before a hearing examiner of the Texas Education Agency. During the appeals process, Hitchcock continued to pay her salary. Therefore, the final decision maker heard her story before upholding the Board's decision to terminate her contract. The Due Process Clause of the Fourteenth Amendment requires nothing more."); *Rodriguez v. Ysleta Indep. Sch. Dist.*, 217 F. App'x 294, 296 (5th Cir. 2007) (per curiam) ("While Rodriguez claims the hearing examiner was biased and committed various errors during the administrative hearing, she does not dispute that the district's board of trustees, the final decisionmaker, granted her a pre-termination opportunity to orally argue her case. During that argument, Rodriguez had the chance to call the hearing examiner's errors to the Board's attention and to challenge the hearing examiner's findings. Rodriguez makes no allegation that this proceeding was procedurally inadequate. In addition, after the Board voted to terminate her contract, Rodriguez acknowledges that she was provided with three opportunities at post-termination process under Texas law to appeal the Board's determination and to again correct mistakes caused by any errors on the part of the hearing examiner. Accordingly, we agree with the district court's conclusion that Rodriguez was afforded all the rights of the due process framework under Texas law. These procedures meet the constitutional minimums for procedural due process.").

Plaintiff's equal protection and due process claims should be dismissed.

>7.   **Plaintiff cannot state a claim under Chapter 21 of the Texas Labor Code.**

Plaintiff appears to raise a claim under Chapter 21 of the Texas Labor Code, also known as the Texas Commission on Human Rights Act ("TCHRA"), *see* Dkt. No. 22 at 10. "The TCHRA prohibits discrimination by private employers against any qualified individual with a disability. TEX. LABOR CODE ANN. § 21.051(1). The TCHRA is similar to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, and Texas courts look to cases interpreting the ADA to decide cases brought under the TCHRA." *Barreto v. Cont'l Express, Inc.*, Civ. A. No. H-05-0290, at *3 (S.D. Tex. June 20, 2006) (citing *Rodriguez v. Conagra Grocery Prods. Co.*, 436 F.3d 468, 473-74 (5th Cir. 2006); *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999)).

Accordingly, the analysis above as to why Plaintiff cannot state a claim under Section 504 – and the ADA – because he was not a qualified individual at the time he was discharged also applies to Plaintiff's TCHRA claim, and this claim also should be dismissed.

>8.   **Defendants, as political subdivisions, are immune from Plaintiff's retaliation claim under Chapter 451 of the Texas Labor Code.**

Plaintiff alleges that Defendants' termination of his employment violated "Texas Labor Code §§ 451.001 through 451.003 (the Anti-Retaliation Statute)." Dkt. No. 22 at 10-11.

"The Texas Anti-Retaliation Law, found in Chapter 451 of the Texas Labor Code, prohibits a person from discharging or discriminating against an employee, who in

good faith files a workers' compensation claim. *See* TEX. LAB. CODE § 451.001(1). This law applies to private employers." *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 54 (Tex. 2011). And, at one point, it was held "to apply to the state's political subdivisions through Chapter 504 of the Labor Code." *Id.* (citing *City of LaPorte v. Barfield*, 898 S.W.2d 288, 298-99 (Tex. 1995)). But a 2005 amendment to the Political Subdivisions Law "says that Chapter 504 does not waive immunity." *Id.* at 58 (citing TEX. LABOR CODE § 504.053(e)).

That amendment led the Texas Supreme Court to determine that "the current version of the Political Subdivisions Law is too internally inconsistent to satisfy" the standard that "[t]he waiver of governmental immunity must be clear and unambiguous." *Id.* at 59 (citing TEX. GOV'T CODE § 311.034). And the Texas Supreme Court therefore has concluded that "a retaliatory discharge claim may not be brought against the government without its consent and the Political Subdivisions Law no longer provides such consent by waiving the government's immunity." *Id.*

There is no dispute that Defendants (Cedar Hill ISD and Superintendent Riddick, sued solely in his official capacity) are political subdivisions protected by governmental immunity. *See, e.g.*, *Bonillas v. Harlandale Indep. Sch. Dist.*, 832 F. Supp. 2d 729, 735 (W.D. Tex. 2011) ("State governmental immunity prohibits suits against the state or its governmental entities, unless the state consents to be sued. A school district, as a governmental unit, is protected by governmental immunity." (citations omitted)).

In light of this immunity, Plaintiff's Chapter 451 claim for retaliation should be

dismissed.

> 9. Plaintiff cannot state a claim under the Juror's Right to Reemployment Act.

Plaintiff alleges that he was "unlawfully terminat[ed] pursuant to" the Juror's Right to Reemployment Act ("JRRA"). Dkt. No. 22 at 9-10. Under that law, "[a] private employer may not terminate the employment of a permanent employee because the employee serves as a juror." TEX. CIV. PRAC. & REM. CODE § 122.001(a). While this law is one of "several specific exceptions to the employment-at-will doctrine" that "the Legislature has carved out," *Johnson v. Waxahachie Indep. Sch. Dist.*, 322 S.W.3d 396, 399 (Tex. App. – Houston [14th Dist.] 2010, no pet.), Cedar Hill ISD is not a private employer but instead is a political subdivision, *see, e.g.*, *Bonillas*, 832 F. Supp. 2d at 735. Plaintiff therefore cannot state a claim under the plain language of the JRRA, and this claim should be dismissed.

> 10. Plaintiff has failed to exhaust his claims under Texas Education Code §§ 22.006 and 21.409.

Related to his alleged jury service, Plaintiff appears to assert a claim under Texas Education Code § 22.006, and he also asserts a temporary disability claim under Texas Education Code § 21.409. *See* Dkt. No. 22 at 8-10. Section 22.006 provides that "[a] school district may not discharge, discipline, reduce the salary of, or otherwise penalize or discriminate against a school district employee because of the employee's compliance with a summons to appear as a juror." TEX. EDUC. CODE § 22.006(a). And Section 21.409 provides that "[e]ach full-time educator employed by a school district shall be given a leave of absence for temporary disability at any time the educator's

condition interferes with the performance of regular duties." TEX. EDUC. CODE § 21.409(a).

Both provisions are in Title II of the Education Code, which means that both are considered "school laws of this state." *Hernandez v. Duncanville Sch. Dist.*, No. 3:04-cv-2028-BH, 2005 WL 723458, at *6 (N.D. Tex. Mar. 29, 2005) ("The Texas Education Code defines 'school laws of this state' as Title I and Title II of the Education Code as well as 'rules adopted under those titles.'" (quoting TEX. EDUC. CODE ANN. § 7.057(f)(2))).

Significantly, under Texas Education Code § 7.057, and "subject to certain exceptions, Texas law *requires* a party whose claim concerns the administration of school laws and involves disputed fact issues to exhaust the statutorily provided administrative remedies with the Commissioner of Education before turning to the courts for relief." *Id.* (quoting *Hoskins v. Kaufman Ind. Sch. Dist.*, No. 3:03-cv130-D, 2003 WL 22364356, at *2 (N.D. Tex. Aug. 25, 2003) (in turn quoting *Godley Ind. Sch. Dist. v. Woods*, 21 S.W.3d 656, 659 (Tex. App. – Waco 2000, pet. denied)); internal quotation marks and brackets omitted; emphasis added in *Hoskins*).

Plaintiff fails to allege that he has properly exhausted either claim by first presenting it to the Commissioner. And, while Plaintiff has filed an administrative action with the Commissioner concerning his termination, as pointed out above, the record of that action, of which the undersigned has already taken judicial notice, does not include either claim.

These claims should be dismissed without prejudice for failure to exhaust. *See*

*Hernandez*, 2005 WL 723458, at *7; *Hoskins*, 2003 WL 22364356, at *3.

      11.    Plaintiff's breach of contract claim should be dismissed as unexhausted.

Plaintiff asserts a claim for "breach of teacher term contract": "Defendants breached the teacher term contract which is controlled by the Texas Education Code" "and administered under the auspices of the Board of Trustees, its policies, Cedar Hill ISD and final executed and terms supervised by Orlando Riddick." Dkt. No. 22 at 13-14.

Similar to his claims that concern the administration of school laws, "actions or decisions of any school district board of trustees [alleging violation of] a provision of a written employment contract between the school district and a school district employee, if a violation causes or would cause monetary harm to the employee" must first be brought to the Texas Education Commissioner. TEX. EDUC. CODE ANN. § 7.057(a)(2)(B).

As stated above, an appeal of the administrative determination concerning Plaintiff's termination is pending in the state courts. To the extent that this claim is tied to that proceeding, which appears to be likely, the trial court's decision has been appealed, and, therefore, all state-court remedies have not been exhausted. And to the extent that this claim is somehow not related to the pending state-court proceeding, Plaintiff has failed to first present it to the Commissioner. Either way, the Court lacks subject-matter jurisdiction over an unexhausted claim, and, accordingly, this claim should be dismissed without prejudice. *Cf. Carter v. Gibson*, No. 4:10-cv-825-Y, 2011

WL 1515049, at *6 (N.D. Tex. Apr. 20, 2011) ("Under Texas law, Carter was required to exhaust his administrative remedies before seeking relief from the employment contract. Carter has not alleged that he did so; thus, this claim must be dismissed for lack of jurisdiction." (citing TEX. EDUC. CODE ANN. § 7.057(a)(2)(B); *N.E. Indep. Sch. Dist. v. Kelley*, 277 S.W.3d 442, 444-45 (Tex. App. – San Antonio 2008, no pet.))).

12.     Defendants are immune from Plaintiff's intentional tort claims.

Plaintiff's final claims – for defamation, libel, and "emotional stress and mental trauma" – are intentional torts. *See* Dkt. No. 22 at 12-13. But Defendants, as political subdivisions are entitled to governmental immunity.

"Under the doctrine of sovereign immunity, a governmental entity cannot be held liable for the actions of its employees unless there is a constitutional or statutory provision waiving such immunity." *Harris Cnty., Tex.. v. Cabazos*, 177 S.W.3d 105, 111 (Tex. App. – Houston [1st Dist.] 2005, no pet.) (citing *City of Amarillo v. Martin*, 971 S.W.2d 426, 427 (Tex. 1998)). Such "immunity generally defeats a court's subject matter jurisdiction over a suit against a state unless the state expressly consents to suit. 'Governmental immunity operates like sovereign immunity to afford similar protection to subdivisions of the State, including counties, cities, and school districts.'" *Austin v. Hood Cnty.*, No. 3:06-cv-1997-D, 2007 WL 1544379, at *2 (N.D. Tex. May 29, 2007) (citing and quoting *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004)).

"Accordingly, a political subdivision of the state of Texas is not liable for the acts or conduct of its employees unless its governmental immunity is waived by the Texas Tort Claims Act" (the "TTCA"). *Powell v. Greenville Indep. Sch. Dist.*, No. 3:10-cv-545-

L-BH, 2010 WL 3359620, at *2 (N.D. Tex. June 24, 2010), *rec. adopted*, 2010 WL 3359618 (N.D. Tex. Aug. 20, 2010) (citing *McIntosh v. Partridge*, 540 F.3d 315, 321 n.3 (5th Cir. 2008); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994)).

> The TTCA waives governmental immunity in three general areas: use of publicly owned vehicles, premises defects, and injuries arising from conditions or use of property. For school districts, the Act's waiver is even narrower and is limited to tort claims involving injuries arising out of the negligent use or operation of motor vehicles. Additionally, governmental immunity is not waived for intentional torts.

*Id.* (internal citations and quotation marks omitted).

As Plaintiff's allegations have nothing to do with "the negligent use or operation of motor vehicles," all Defendants, sued in their official capacity only, are therefore immune from liability, and all Plaintiff's intentional tort claims should be dismissed.

## II. Leave to Amend

The Court should deny the pending motion for leave to amend without prejudice for the reasons and to the extent explained below.

### A. Legal Standards

Because the standards by which the Court evaluates a motion for leave to amend the pleadings vary according to whether the motion was filed before or after the deadline established in the scheduling order, the Court must determine, as an initial matter, whether the motion was filed before or after the deadline. *See, e.g., Orthoflex, Inc. v. Thermotek, Inc.*, Nos. 3:11-cv-08700-D & 3:10-cv-2618-D, 2011 WL 4398279, at *1 (N.D. Tex. Sept. 21, 2011) ("Motions for leave to amend are typically governed by Rule 15(a)(2), or, if the time to seek leave to amend has expired, by Rule 16(b)(4) and

then by Rule 15(a)(2).").

When the deadline for seeking leave to amend pleadings has expired, the Court must first determine whether to modify the scheduling order under the Federal Rule of Civil Procedure 16(b)(4) good cause standard. *See S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003). To meet the good cause standard, the party must show that, despite her diligence, she could not reasonably have met the scheduling order deadline. *See id.* at 535. The Court assesses four factors when deciding whether to grant an untimely motion for leave to amend under Rule 16(b)(4): "'(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.'" *Id.* at 536 (quoting *Reliance Ins. Co. v. La. Land & Exploration Co.,* 110 F.3d 253, 257 (5th Cir. 1997)). If the movant satisfies Rule 16(b)(4)'s requirements, the court must then determine whether to grant leave to amend under Federal Rule of Civil Procedure 15(a)(2)'s more liberal standard, which provides that "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2); *see S&W Enters.*, 315 F.3d at 536.

When the party is not subject to an expired deadline for seeking leave to amend, Rule 15(a) requires that leave to amend be granted freely "when justice so requires." FED. R. CIV. P. 15(a)(2). Leave to amend is not automatic, *see Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005), but the federal rules' policy "is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading," *Dussouy*

-34-

*v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). The Court "may consider a variety of factors" when deciding whether to grant leave to amend, "including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Jones*, 427 F.3d at 994. But Rule 15(a) provides a "strong presumption in favor of granting leave to amend,"*Fin. Acquisition Partners, LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006), and the Court must do so "unless there is a substantial reason to deny leave to amend," *Dussouy*, 660 F.2d at 598; *accord Jebaco Inc. v. Harrah's Operating Co. Inc.*, 587 F.3d 314, 322 (5th Cir. 2009) ("leave to amend is to be granted liberally unless the movant has acted in bad faith or with a dilatory motive, granting the motion would cause prejudice, or amendment would be futile"); *see also Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (a court may "refuse leave to amend if ... the complaint as amended would be subject to dismissal" (quoting *Ackerson v. Bean Dredging, LLC*, 589 F.3d 196, 208 (5th Cir. 2009); internal quotation marks omitted)).

Because Plaintiff attempts to amend his complaint (for the third time) shortly after Defendants moved to dismiss the original and first amended complaints, and because Plaintiff filed the current motion for leave to amend while the amended motion to dismiss was pending, it should be further noted that the Court is "not required to grant leave to amend where doing so would encourage dilatory or abusive tactics," such as requesting amendment solely to force a defendant to file a new motion to dismiss. *Player v. Artus*, No. 06-cv-2764 (JG), 2008 WL 324246, at *3 (E.D.N.Y. Feb. 6, 2008)

-35-

(citing *Littlejohn v. Artuz*, 271 F.3d 360, 363 (2d Cir. 2001) ("[A]lthough Rule 15 requires that leave to amend be 'freely given,' district courts nonetheless retain the discretion to deny that leave in order to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive.")).

B.    Analysis

March 14, 2016 was the deadline to amend the pleadings and join additional parties. *See* Dkt. No. 32, ¶¶ 2, 3.

At the conclusion of the March 23, 2016 status conference, during which Plaintiff moved orally to withdraw his timely-filed March 9, 2016 motion for leave to file a second amended complaint [Dkt. No. 35], it seemed to be understood that the parties would subsequently meet and confer and, as appropriate, then file either a joint status report or an agreed order regarding Plaintiff's seeking leave to file a third amended complaint. *See* Dkt. No. 56. Plaintiff instead unilaterally filed a Motion to File Amended Complaint and Add Parties and Clarify Claims [Dkt. No. 66] – essentially a motion for leave to file a third amended complaint – which Defendants noticed an opposition to, and the undersigned struck, because the motion failed to comply with the requirements of the Court's Standing Order on Non-Dispositive Motions [Dkt. No. 18]. *See* Dkt. No. 68.

A renewed motion for leave to amend the complaint was filed on April 23, 2016. *See* Dkt. No. 72. The required joint status report, supported by appendices filed by the parties, was filed the day before. See Dkt. Nos. 69, 70, & 71.

As pointed out in the joint status report, Defendants do not oppose leave to file

entirely:

> As defense counsel represented to the Court in the status conference held March 23, 2016, Defendants had no intention of contesting this Motion for Leave to the extent that it added additional parties as set forth in the since withdrawn Second Amended Complaint. However, Plaintiff attempts to extort that representation and now requests the Court allow him to add an additional 20 additional pages of allegations and new claims (interference under the FMLA, a "disparity in treatment" claim under the FMLA, and violations of Texas Labor Code § 52.051) that were not presented in his timely filed Motion for Leave to File his Second Amended Complaint....
>
> With the exception of the three new claims, Plaintiff brings identical causes of action against the individual trustees as those previously lodged in the Second Amended Complaint as well as claims identical to those brought against the District and Superintendent Riddick to date. After over two months of briefing on Defendants' Amended Motion to Dismiss [Dkt. No. 13] – briefing that concluded the day before Plaintiff filed the currently disputed Motion for Leave and after ample time to present any defenses to the dismissal motion, Plaintiff now seeks to circumvent the pleading deadlines established by this Court under the guise that Defendants are backtracking on their prior agreement to not oppose this Motion.

Dkt. No. 69 at 13-14.

Given Defendants' position and the undersigned's recommendation that all claims presented in the operative complaint should be dismissed – some but not all of those claims with prejudice – the Court should deny the pending motion for leave to file an amended complaint without prejudice to the parties' meeting and conferring after entry of any order accepting the undersigned's recommendations, at which time the parties should be instructed to discuss which of Plaintiff's claims – including the three new claims that Plaintiff appears to assert in the proposed third amended complaint – can be repled. The parties then should be instructed to file a joint status report concerning their conference, and, if appropriate, Plaintiff could file one last

motion for leave to amend, attaching to that motion a proposed amended complaint.

## Recommendation

The Court should grant Defendants' amended motion to dismiss [Dkt. No. 25]; deny Defendants' motion to strike [Dkt. No. 63]; and deny without prejudice Plaintiff's motion for leave to file a third amended complaint [Dkt. No. 72].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 26, 2016

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE