IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TERRENCE M. GORE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:15-cv-3963-M-BN |
| | § | |
| CEDAR HILL INDEPENDENT | § | |
| SCHOOL DISTRICT, ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

This *pro se* action has been referred to the undersigned United States magistrate judge for pretrial management pursuant to 28 U.S.C. § 636(b) and a standing order of reference from Chief Judge Barbara M. G. Lynn.

On September 2, 2016, the Court, accepting the findings of fact, conclusions of law, and recommendation of the undersigned, granted the amended motion to dismiss filed by Defendants Cedar Hill Independent School District ("Cedar Hill ISD") and Orlando Riddick, its superintendent, and denied Plaintiff Terrence M. Gore's motion for leave to file a third amended complaint without prejudice to the parties' meeting to discuss leave to amend in light of the Court's ruling on the amended motion to dismiss and the filing of a joint status report ("JSR") concerning their conference. *See Gore v. Cedar Hill Indep. Sch. Dist.*, No. 3:15-cv-3963-M-BN, 2016 WL 4597513 (N.D. Tex. July 26, 2016), *rec. accepted*, 2016 WL 4593515 (N.D. Tex. Sept. 2, 2016).

The Court previously granted the parties' agreed motion to dismiss the Cedar

Hill ISD Board of Trustees without prejudice. *See* Dkt. Nos. 59 & 60.

The parties' JSR [Dkt. No. 88], as supplemented, *see* Dkt. Nos. 89, 90, & 91, and Gore's proposed third amended complaint [Dkt. No. 88-2] are now before the Court. And the undersigned issues the following findings of fact, conclusions of law, and recommendation that the Court should construe the JSR as supplemented as a renewed motion for leave to file a third amended complaint, deny the motion, and dismiss this action with prejudice.

## Applicable Background

The Court has previously set out the factual and procedural background of this action in detail. *See Gore*, 2016 WL 4597513, at *1. For purposes of the construed renewed motion for leave to amend, the undersigned notes that the proposed third amended complaint alleges five causes of action against Cedar Hill ISD, Superintendent Riddick (in his official and individual capacity), and six current or former Cedar Hill ISD school trustees (all sued in their individual capacities) – (1) violation of the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* (the "FMLA"); (2) "Disparity in Treatment"; (3) unlawful termination under Texas Labor Code Section 52.051; (4) denial of due process and equal protection under the Fourteenth Amendment; and (5) various intentional tort claims. The Court already has addressed and dismissed three of these causes of action, *see generally Gore*, 2016 WL 4597513, but the undersigned will address each in turn below.

## Legal Standards

Because the standards by which the Court evaluates a motion for leave to amend

the pleadings vary according to whether the motion was filed before or after the deadline established in the scheduling order, the Court must determine, as an initial matter, whether the motion was filed before or after the deadline. *See, e.g.*, *Orthoflex, Inc. v. Thermotek, Inc.*, Nos. 3:11-cv-08700-D & 3:10-cv-2618-D, 2011 WL 4398279, at *1 (N.D. Tex. Sept. 21, 2011) ("Motions for leave to amend are typically governed by Rule 15(a)(2), or, if the time to seek leave to amend has expired, by Rule 16(b)(4) and then by Rule 15(a)(2).").

When the deadline for seeking leave to amend pleadings has expired, the Court must first determine whether to modify the scheduling order under the Federal Rule of Civil Procedure 16(b)(4) good cause standard. *See S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003). To meet the good cause standard, the party must show that, despite his diligence, he could not reasonably have met the scheduling order deadline. *See id.* at 535. The Court assesses four factors when deciding whether to grant an untimely motion for leave to amend under Rule 16(b)(4): "'(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.'" *Id.* at 536 (quoting *Reliance Ins. Co. v. La. Land & Exploration Co.,* 110 F.3d 253, 257 (5th Cir. 1997)). If the movant satisfies Rule 16(b)(4)'s requirements, the court must then determine whether to grant leave to amend under Federal Rule of Civil Procedure 15(a)(2)'s more liberal standard, which provides that "[t]he court should freely give leave when justice

so requires." FED. R. CIV. P. 15(a)(2); *see S&W Enters.*, 315 F.3d at 536.

When the party is not subject to an expired deadline for seeking leave to amend, Rule 15(a) requires that leave to amend be granted freely "when justice so requires." FED. R. CIV. P. 15(a)(2). That is, Rule 15(a) provides a "strong presumption in favor of granting leave to amend,"*Fin. Acquisition Partners, LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006), and the Court must do so "unless there is a substantial reason to deny leave to amend," *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). Thus, while leave to amend is not automatic, *see Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005), the federal rules' policy "is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading," *Dussouy*, 660 F.2d at 598.

The Court "may consider a variety of factors" when deciding whether to grant leave to amend, "including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Jones*, 427 F.3d at 994; *accord Jebaco Inc. v. Harrah's Operating Co. Inc.*, 587 F.3d 314, 322 (5th Cir. 2009) ("leave to amend is to be granted liberally unless the movant has acted in bad faith or with a dilatory motive, granting the motion would cause prejudice, or amendment would be futile").

Therefore, a court may "refuse leave to amend if ... the complaint as amended

would be subject to dismissal," *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting *Ackerson v. Bean Dredging, LLC*, 589 F.3d 196, 208 (5th Cir. 2009); internal quotation marks omitted); *see also Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016) (While "the language of [Rule 15(a)] 'evinces a bias in favor of granting leave to amend,' ... a district court need not grant a futile motion to amend." (quoting *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (in turn quoting *Chitimacha Tribe of La. v. Harry L. Laws Co.*, 690 F.2d 1157, 1162 (5th Cir. 1982)); citation omitted)); *cf. Stem v. Gomez*, 813 F.3d 205, 215-16 (5th Cir. 2016) ("When an amended complaint would still 'fail to survive a Rule 12(b)(6) motion,' it is not an abuse of discretion to deny the motion'" for leave to amend. (quoting *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014))).

Because the Court's futility analysis parallels an analysis of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the undersigned notes that "[u]nder that standard, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' [And a] claim is facially plausible if the complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (in turn quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); internal quotation marks omitted)); *see also Johnson v. City of Shelby, Miss.*, 574 U.S. \_\_\_\_, 135 S. Ct. 346, 347 (2014) (per curiam) ("[T]o survive a motion to dismiss" under *Twombly* and *Iqbal*, a

plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that a plaintiff contends entitle him or her to relief. (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e))).

The FMLA

Plaintiff again attempts to allege a claim under the FMLA's proscriptive provision, which "protects employees from retaliation or discrimination for exercising their rights under the FMLA." *Mauder v. Metro. Transit Auth. of Harris Cty., Tex.*, 446 F.3d 574, 580 (5th Cir. 2006) (citations omitted). To state such a claim, a plaintiff must allege: "1) he is protected under the FMLA; 2) he sought to return to work before the FMLA leave expired; and 3) the employer failed to reinstate him to [his] position, or an equivalent position." *Id.*

Plaintiff's proposed amended claim for retaliation/discrimination under the FMLA suffers the same infirmity that led to the dismissal of the claim as initially pleaded. Plaintiff again asserts that he "was unable to return to his duties at the start of the 2014-2015 school year." Dkt. No. 88-2 at 9. *Compare id.*, *with Gore*, 2016 WL 4597513, at *7 ("The FMLA protects employees from retaliation for using entitled FMLA leave; but, when an employee after exhausting the 12 weeks of available FMLA leave still cannot return to work, or fails to do so, then that employee no longer has a right to reinstatement under the FMLA, and the employer may lawfully terminate him. Therefore, Defendants' termination of Plaintiff's employment after he informed them that he still could not return to work even after the expiration of his FMLA leave

-6-

did not violate Plaintiff's rights under the FMLA." (citing *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 763-64 (5th Cir. 2001) ("If an employee fails to return to work on or before the date that FMLA leave expires, the right to reinstatement also expires." (collected cases omitted)), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *Jackson v. Signh*, Civ. A. No. H-06-2920, 2007 WL 2818322 (S.D. Tex. Sept. 25, 2007) (dismissing FMLA retaliation claim in which the plaintiff failed to allege that "'he sought to return to work before the FMLA leave expired'" (quoting *Mauder*, 446 F.3d at 580)))).

Because this claim remains not facially plausible as pleaded in the proposed amendment, the Court should deny leave to amend as futile, and this claim should be dismissed with prejudice.

"Disparity in Treatment"

Although Plaintiff proposes a freestanding claim titled "Disparity in Treatment," based on Defendants' treatment of him compared to other, unidentified Cedar Hill ISD employees, he fails to identify a specific cause of action. *See* Dkt. No. 88-2 at 18-19. But, to the extent that Plaintiff alleges an employment discrimination claim, the Court has dismissed Plaintiff's claim under Title I of the Americans with Disabilities Act (the "ADA"), as amended, because, since Plaintiff failed to file this action within 90 days of receiving a "right-to-sue" letter from the EEOC, such a claim is time-barred. *See Gore*, 2016 WL 4597513, at *7 ("The 90-day limitations period is strictly construed, and courts routinely dismiss claims that are filed after the limitations period expires for

lack of subject-matter jurisdiction, even if the claim is filed only one day late." (citations omitted)).

Because any similar employment-based disparate treatment claim would also be time-barred for the same reason as Plaintiff's ADA-based discrimination claim is time-barred, the Court should deny leave to amend as futile, and this claim should be dismissed with prejudice. *Cf. Hunt v. Riverside Transp.*, Civ. A. No. 11-2020-DJW, 2012 WL 1893515, at *5 (D. Kan. May 23, 2012) ("As Plaintiff failed to seek leave to amend his complaint with 90 days of receiving his second right to sue letter and Plaintiff's proposed Title VII retaliation claim does not relate back under Rule 15(c)(1)(B), the Court finds that it would be futile to allow Plaintiff to amend his complaint to add a claim for retaliation under Title VII.").

Texas Labor Code Section 52.051

Plaintiff next proposes a new claim premised on his contention that, in terminating his employment in January 2015, Defendants retaliated against him for complying with two subpoenas – one on May 27, 2009 and another during the 2012-2013 school year. *See* Dkt. No. 88-2 at 18-21. This new claim is based on a provision of the Texas Labor Code that provides that "[a]n employer may not discharge, discipline, or penalize in any manner an employee because the employee complies with a valid subpoena to appear in a civil, criminal, legislative, or administrative proceeding." TEX. LABOR CODE § 52.051(a).

Another judge of this Court addressed this "poorly written" and infrequently cited statute in 2004, and concluded that there, unlike the facts alleged here, "the close

proximity between [the employee's] discharge and her compliance with the subpoena creates a presumption that she was penalized for complying with the subpoena." *Good v. Ask Jeeves, Inc.*, No. 3:02-cv-1946-L, 2004 WL 2203248, at *9 (N.D. Tex. Sept. 30, 2004). Since *Good*, another federal district court in Texas has concluded that governmental employers sued in their official capacity are immune from an employee's retaliation claim under Section 52.051 and therefore such a claim does not survive a motion to dismiss. *See Acala v. Tex. Webb Cty.*, 620 F. Supp. 2d 795, 802-04 (S.D. Tex. 2009).

The Court should accept the thorough sovereign/governmental immunity analysis in *Acala*, through which the court concluded that the Texas Legislature failed to include the requisite "clear and unambiguous language" to waive sovereign immunity "in the Texas Labor Code with regard to allegations of wrongful termination for compliance with a subpoena," *id.* at 804, and should apply that analysis to Plaintiff's Section 52.051 claims against Cedar Hill ISD and the individual defendants sued in their official capacity, and those claims should be dismissed, *see also Austin v. Hood Cty.*, No. 3:06-cv-1997-D, 2007 WL 1544379, at *2 (N.D. Tex. May 29, 2007) ("Sovereign immunity generally defeats a court's subject matter jurisdiction over a suit against a state unless the state expressly consents to suit. 'Governmental immunity operates like sovereign immunity to afford similar protection to subdivisions of the State, including counties, cities, and school districts.'" (citing and quoting *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004))).

As to Plaintiff's individual-capacity claims, as pointed out in *Acala*, "the term 'employer' is not defined in Section 52.051 or in Chapter 52 (Miscellaneous Restrictions) of Title 2 of the Texas Labor Code. Also, there is no general definition of 'employer' that applies to all of the chapters in Title 2 of the Texas Labor Code." 620 F. Supp. 2d at 803. And, here, Plaintiff fails to plausibly allege that any one individual defendant – Superintendent Riddick or (as would be more attenuated) a single current or former school trustee – acting alone in an individual capacity should be considered his employer. Therefore, any individual-capacity claims related to Section 52.051 are also futile. *Cf. Moody v. Jefferson Parish Sch. Bd.*, 803 F. Supp. 1158, 1160 (E.D. La. 1992) (concluding that the defendant school board and its members, "each in their representative capacities, *collectively functioned as plaintiff's employer*" and denying a motion to dismiss "with regard to the school board and its members *in their representative capacities*" (emphasis added)).

The Court should deny leave to amend to add this claim, and this claim should be dismissed with prejudice.

Fourteenth Amendment Due Process and Equal Protection

Plaintiff also attempts to re-allege his dismissed claims under the Due Process Clause and the Equal Protection Clause. *See* Dkt. No. 88-2 at 21-23.

His due process claim, based on an assertion that Defendants deprived him of a property right to continued employment without due process protections, still fails for the reasons the Court previously explained:

Accepting that Plaintiff had a property right to continued employment, as he alleges,

> [i]n the specific context of the termination of a tenured employee, the Supreme Court has ruled that due process ordinarily requires the employer to give the employee "some kind of a hearing" prior to termination, namely, "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."

*Washington v. Burley*, 930 F. Supp. 2d 790, 799-800 (S.D. Tex. 2013) (quoting *Loudermill*, 470 U.S. at 542-46).

As Plaintiff also alleges, "[t]he District stated in writing on September 4, 2014 that [it was] terminating Plaintiff's employment for 'good cause,'" and he was "terminated" on "January 5, 2015." Dkt. No. 22 at 4. And, according to a Texas state court's amended findings of fact, of which this Court may take judicial notice, *cf. Brown v. Lippard*, 350 F. App'x 879, 882 n.2 (5th Cir. 2009) (per curiam), prior to his termination, Plaintiff requested a hearing before an independent hearing examiner, an evidentiary hearing was conducted, Plaintiff appealed the hearing examiner's decision to the school board, and, after his termination, Plaintiff appealed to the Texas Commissioner of Education and then has appealed the Commissioner's decision in the state courts, *see Gore v. Cedar Hill Indep. Sch. Dist.*, No. DC-15-06183 (134th Jud. Dist. Ct., Dallas Cty., Tex. Mar. 21, 2016) (reversing Commissioner's dismissal of Plaintiff's appeal for want of jurisdiction following a bench trial, a ruling which has been appealed).

In light of these undisputed facts, Plaintiff cannot state a claim that Defendants denied him procedural due process in terminating his employment. *See Coggin v. Longview Indep. Sch. Dist.*, 337 F.3d 459, 465-66 (5th Cir. 2003) (en banc) ("Under well-established federal law, the constitutional minimums for due process require that the final decision maker must hear and consider the employee's story before deciding whether to discharge the employee.... The Texas law [applicable here] complies with the federal due process requirement by providing that the school board, as the exclusive decision maker with regard to employment termination decisions, 'shall allow each party to present an oral argument to the board' before the board determines cause or discharges the employee." (quoting TEX. EDUC. CODE ANN. § 21.258(b); footnotes omitted)); *cf. Washington v. Burley*, 930 F. Supp. 2d 790, 803 (S.D. Tex.

-11-

> 2013) ("Washington's right to pretermination due process would have been satisfied had [the school district] provided him with even a short, informal opportunity to present his side of the story to the board members who would vote on his termination.").

*Gore*, 2016 WL 4597513, at *12 (footnote omitted).

And Plaintiff's equal protection claim fails because he again neither alleges facts that support a showing that Defendants discriminated against him based on a disability nor identifies others similarly situated who Defendants treated differently. *See id.* at *11.

Because these claims remain facially not plausible as pleaded in the proposed amendment, the Court should deny leave to amend as futile, and the claims should be dismissed with prejudice.

<u>Intentional Torts</u>

The Court dismissed, as barred by immunity, Plaintiff's intentional tort claims – for defamation, libel, and "emotional stress and mental trauma" – asserted against Cedar Hill ISD and Superintendent Riddick in his official capacity. *See Gore*, 2016 WL 4597513, at *15-*16.

Plaintiff now alleges that the individual defendants he has named (Superintendent Riddick and the current and former school trustees), acting in their individual capacities, defamed, libeled, and inflicted "emotional stress and mental" trauma on him by posting to the school district's website, on September 8, 2014, a notice of his proposed termination, and by posting to the website, on January 5, 2015, that he was terminated. *See* Dkt. No. 88-2 at 23-26.

The Court need not accept Defendants' explanation that such notices were required by the Texas Open Meetings Act, *see* Dkt. No. 88 at 11-12 (citing TEX. GOV'T CODE § 551.001 *et seq.*), to conclude that the defamation and libel claims are barred by the applicable one-year statute of limitations, *see* TEX. CIV. PRAC. & REM. CODE § 16.002.

Plaintiff included the substance of these claims – that is, he alleged he was harmed by the September 2014 and January 2015 website notices – for the first time in his amended complaint filed February 2, 2016. *See* Dkt. No. 22 at 12-13. Such assertions were not made in the initial complaint filed December 14, 2015, within one year from the alleged January 4, 2015 posting. *See generally* Dkt. No. 3.

And, because the factual allegations in the initial complaint did not "'put [Defendants] on notice regarding the [defamation and libel claims]'" – "[t]he 'critical' issue" in determining whether otherwise time-barred claims in a proposed amended complaint relate back to the initial complaint – neither the February 2016 amendment nor the current, proposed amendment "relates back to the date of the original pleading." *Maradiaga v. Intermodal Bridge Transport, Inc.*, 899 F. Supp. 2d 551, 565 (N.D. Tex. 2012) (quoting *Holmes v. Greyhound Lines, Inc.*, 757 F.2d 1563, 1566 (5th Cir. 1985), and explaining that, under the federal rules, "[a]n amendment to a pleading relates back to the date of the original pleading when 'the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out or attempted to be set out in the original pleading'" (quoting FED. R. CIV. P. 15(c)(1)(B))); *see also*

*Richardson v. HRHH Gaming Senior Mezz, LLC*, 99 F. Supp. 3d 1267, 1275-76 (D. Nev. 2015) ("Whether a defendant has fair notice of the transaction, occurrence, or conduct being called into question depends on the commonality of the operative facts alleged in the initial and amended pleading." (citations omitted)).

To the extent that Plaintiff's claim that the applicable defendants inflicted "emotional stress and mental" trauma on him is more akin to the tort of intentional infliction of emotional distress ("IIED"), which is "subject to a two year statute of limitations," *Georgen-Saad v. Tex. Mut. Ins. Co.*, 195 F. Supp. 2d 853, 859 (W.D. Tex. 2002) (citing TEX. CIV. PRAC. & REM. CODE § 16.003), Plaintiff's factual allegations cannot plausibly support "the exacting requirements of that tort," *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005), which only arises when "[e]xtreme and outrageous conduct is conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003) (internal citations and quotation marks omitted); *accord Larson v. Hyperion Int'l Techs., L.L.C.*, 494 F. App'x 493, 496 (5th Cir. 2012) (per curiam) (affirming dismissal of an IIED claim).

The Court should deny leave to amend to recast Plaintiff's intentional tort-based claims, and these claims should be dismissed with prejudice.

## Recommendation

The Court should deny leave to amend and dismiss this action with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 8, 2016

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE